UNITED STATES of America,
Appellant,

v.

Billy JOHNSTON, Jr., Appellee.

No. 86–1522.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1986.

Decided Feb. 10, 1987.

Debra E. Herzog, Asst. U.S. Atty., St. Louis, Mo., for appellant.

Henry B. Hine, Clayton, Mo., for appellee.

Before JOHN R. GIBSON, FAGG, and MAGILL, Circuit Judges.

FAGG, Circuit Judge.

Billy Johnston, Jr., was indicted for possession with intent to distribute and conspiracy to distribute cocaine. *See* 21 U.S.C. §§ 841(a), 846. On Johnston's motion the district court suppressed certain drug-related evidence. The United States appeals and we reverse.

As part of an on-going investigation of illegal drug activities in St. Louis County, Missouri, agents of the Drug Enforcement Administration (DEA) were able to coordinate an undercover drug purchase with Robert Lampasi. Lampasi directed agents to a parking lot next to the DePaul Health Center Care Unit (hospital), a drug rehabilitation center, for delivery of the drugs. Agent Walton arrived with other agents at the parking lot where Lampasi was already parked.

Rick Vellmer then came out of the hospital. After speaking to Lampasi, Vellmer returned to the hospital. Agent Walton observed Vellmer through a window in the hospital. An exchange appeared to take place between Vellmer and another man

who was unknown to the agents. Agent Walton believed Vellmer was obtaining cocaine for the impending sale.

Vellmer returned to the parking lot and approached Agent Walton's vehicle. Vellmer went back into the hospital, however, when he spotted a hospital security guard in the parking lot. After several unsuccessful attempts to consummate the drug transaction, DEA agents arrested Lampasi and went into the hospital to pursue Vellmer.

Agent Walton and another DEA agent first met with hospital personnel. At that time the agents were aware of Vellmer's physical appearance and his first name. They did not then know Billy Johnston was also a patient at the hospital or suspect he was involved in the aborted drug transaction. The agents requested an opportunity to investigate the patient they had observed in the parking lot. The hospital's nursing supervisor referred the agents to Chavis L. Cole, the unit manager, who was responsible for detecting drug use by patients.

Cole showed the agents a book of patients' photographs. The photographs were not identified by name. From these photographs the agents recognized Vellmer and asked to investigate him and his room. Cole then checked hospital records and found Vellmer and his roommate (Johnston) had signed authorization forms permitting hospital employees to search their room for contraband that "may have an adverse effect on * * * the care and treatment of [the] patients."

The agents proceeded with Cole to Vellmer's room. Although neither Vellmer nor Johnston had yet been identified by name, the agents knew they had signed search authorization forms. Johnston left the room and the agents spoke to Vellmer, their only suspect. After the agents placed Vellmer under arrest and advised him of his constitutional rights, Vellmer pointed to the other side of the room and declared: "The dope is my roommate's. It's in his pillow and the radio."

At that point Johnston returned to the room. In the presence of Johnston and Vellmer, Agent Walton asked Cole to search the room. No contraband was found on Vellmer's side of the room. Varying quantities of cocaine, however, were found in Johnston's belongings. When Agent Walton asked Cole to search further, Johnston stated all the cocaine had been found. The agents then arrested Johnston.

Johnston filed a motion to suppress the cocaine and his incriminating statement, claiming they were obtained in violation of the patient confidentiality requirements contained in 42 U.S.C. § 290ee–3 and accompanying regulations. The district court agreed with Johnston and granted the motion.

In formulating a drug abuse prevention and rehabilitation program, Congress provided:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function * * * shall * * * be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

42 U.S.C. § 290ee–3(a).

Section 290ee–3(b) states that records may be disclosed under limited circumstances including patient consent or court order. Other than signing a form authorizing searches by hospital personnel, Johnston did not consent to disclosure and the DEA agents did not obtain a court order. Thus, Johnston argues the DEA agents violated this statute and underlying regulations when they learned of his search authorization form and when they saw him as they initially entered the room.

In looking toward the goal of effective rehabilitation, Congress saw the need to shield the drug addict from public scrutiny while the addict seeks treatment. Thus, Congress declared that patient records are confidential. *Id.* § 290ee–3; *see also* 42 C.F.R. § 2.13(a). The accompanying regu-

lations generally prohibit disclosure of "all information about patients, including their attendance or absence, physical whereabouts, or status as patients, whether or not recorded, in the possession of program personnel." 42 C.F.R. § 2.13(c).

In providing for confidentiality, Congress focused on the custodians of the patient records. *See* 42 U.S.C. § 290ee–3(a); 42 C.F.R. § 2.13(a). Because these custodians, not law enforcement officials, have "control over or access to patients' records[, they] must understand that disclosure is permitted only under the circumstances and conditions set forth in [the statute and regulations]." H.R. Conf. Rep. No. 920, 92d Cong., 2d Sess. 33, *reprinted in* 1972 U.S.Code Cong. & Admin.News 2062, 2072. Congress also provided that "[e]xcept as authorized by a court order * * *, no record * * * may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient." 42 U.S.C. § 290ee–3(c). Thus, in a secondary way, law enforcement officials are affected by the confidentiality requirements.

When agents first entered the hospital, their focus was on Vellmer. After identifying Vellmer from photographs and requesting to see him and search his room, the agents' focus was still only on Vellmer. Any violation of Vellmer's confidentiality rights is not at issue here. While focusing on Vellmer, the agents had done nothing "to initiate or substantiate any criminal charges" against Johnston and were not using the information then obtained "to conduct any investigation" of him. At no time did the agents actively seek disclosure of Johnston's records.

In all likelihood, the agents' knowledge that Johnston had signed a search authorization form and their observation of him on entering Vellmer's room infringed on the statute's informational restrictions. Nevertheless, that knowledge was not used to pursue criminal charges against Johnston or to investigate him. The agents' request that Johnston leave the room to allow them to interview Vellmer demon-

strated their focus was on Vellmer. The agents did not suspect Johnston of involvement in the drug transaction until Vellmer volunteered that Johnston had the drugs. This disclosure was not part of a confidential patient record and could be acted on by the DEA.

The search was done by Cole, a hospital employee, in conformity with Johnston's written authorization. Although DEA agents may have encouraged Cole to search, he was authorized to do so. Further, after hearing Vellmer's statements about drugs, Cole was fulfilling his duty as unit manager to seize contraband.

We do not believe Congress intended drug rehabilitation programs to become "sanctuaries for drug abusers who violate the law while enrolled in the program." *United States v. Coffman,* 567 F.2d 960, 962 (10th Cir.1977); *see* 37 Fed.Reg. 24,636 (1972) ("It must be emphasized that the operation of this section in no way creates a sanctuary for criminals."). In addition, the prohibition against disclosures "must yield to the practical necessity to permit protection from, and prompt reporting of, criminal acts." 42 C.F.R. § 2.13–1(c). Cole responded to this need for practicality when he searched the room once Vellmer revealed that cocaine was in the very room in which Cole and the agents stood.

Suppression of the seized contraband and Johnston's incriminating statement is not an appropriate remedy in this situation, if indeed a violation of the statutory framework has occurred. Courts most often suppress evidence when the action deters future police misconduct. *See Nix v. Williams,* 467 U.S. 431, 442–43, 104 S.Ct. 2501, 2508–09, 81 L.Ed.2d 377 (1984); *United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976) ("[T]he 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.'" (quoting *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974))). Here, the agents did not use Johnston's patient records to initiate or substantiate criminal charges, or to conduct an investigation of

him. The fatal blow to Johnston came from Vellmer. Not until that point did the agents look to Johnston as a suspect. The agents did not act to frustrate the purpose of the statute and nothing would be gained by suppressing the evidence.

Accordingly, we reverse the district court's order and remand for further proceedings.